## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JENNIFER A. QUARLES,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00572-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Jennifer A. Quarles has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 16, 17).

Upon consideration of the parties' briefs (Docs. 11, 12), those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and the oral argument of the parties made May 16, 2016, the Court finds that Quarles's case is due to be **REMANDED under sentence six of 42 U.S.C. § 405(g)**.

# I.   <u>Background</u>

On February 14, 2013, Quarles filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"),[1] both alleging disability beginning November 1, 2012.[2]  After her applications were initially denied, Quarles requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on July 30, 2014.  Quarles was represented by an attorney at the hearing.  On November 19, 2014, the ALJ issued an unfavorable decision on Quarles's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 22 – 41).

What happened next is the primary concern of this action.  The administrative record indicates that Quarles's administrative representative submitted to the Appeals Council for the SSA's Office of Disability Adjudication and Review, via facsimile transmission, a request for review of the ALJ's unfavorable decision.  Though the request brief was dated January 13, 2015 (R. 18), the telecopier cover sheet that accompanied it was dated March 13, 2015, and contained

---

[1] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

the notation: "Please process with original appeal date of 1/13/15." (R. 17). On May 15, 2015, the Appeals Council issued a notice stating that Quarles's request for review was considered untimely because it was due January 23, 2015, but not filed until March 13, 2015, and there was "no statement or other information about why [Quarles] did not file the appeal on time." (R. 9 – 10).

In response to the Appeals Council's notice, Quarles's administrative representative sent the Appeals Council a letter stating: "I wrote an appeal letter on January 13, 2015, and faxed it to your office on January 14, 2015. When my secretary called to check the status of the claim on March 13, 2015, she was told the appeal was not on record and she re-submitted the appeal on that date. Please continue to process the appeal." (R. 7). On September 13, 2015, the Appeals Council issued an order dismissing Quarles's request for review. (R. 1 – 5). After again noting that the request for review faxed March 13, 2015, was untimely, the Appeals Council stated:

> The regulations provide that the Appeals Council may dismiss a request for review where the claimant has failed to file the request within the stated period of time and the time for filing has not been extended (20 CFR 404.971 and 416.1471). The time period will be extended if good cause is shown for missing the deadline (20 CFR 404.968(b) and 416.1468(b)).
>
> In a statement of good cause for the untimely request for review, the claimant's representative indicated that he wrote an appeal letter on January 13, 2015 and faxed it to the Appeals Council on January 14, 2015. The representative indicated that, when his secretary called to check the status of the appeal on March 13, 2015, she was told the appeal was not on record and she re-submitted the appeal on that date. The Council notes that the representative's informal request for review was dated January 13, 2015. However, the representative has not provided evidence that the informal request for review was actually

submitted to the Council prior to March 13, 2015.

The Appeals Council, therefore, finds that there is no good cause to extend the time for filing and, accordingly, dismisses the claimant's request for review.

(R. 4).

On November 11, 2015, Quarles, represented by new counsel, filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's decision. (Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.").

## II.   Claims on Judicial Review

Quarles claims "the Appeals Council's dismissal of her request for review as untimely and without good cause for extending the filing deadline was an abuse of discretion."   Alternatively, she argues that the dismissal "should be reversed based upon []new and material evidence submitted" with her brief.  (Doc. 11 at 4 – 5).

## III.   Standard of Review

The Social Security regulations provide that a party to an ALJ's hearing decision "may ask that the time for filing a request for the review be extended. The request for an extension of time must be in writing. It must be filed with the Appeals Council, and it must give the reasons why the request for review was not filed within the stated time period."  20 C.F.R. §§ 404.968(b), 416.1468(b).  The "time period will be extended" if the requesting party "show[s] that [she] had good cause for missing the deadline…"  *Id.*  The standards for showing such "good cause" are explained in 20 C.F.R. §§ 404.911 and 416.1411, as follows:

> (a) In determining whether you have shown that you have good cause for missing a deadline to request review we consider—
>
> (1) What circumstances kept you from making the request on time;
>
> (2) Whether our action misled you;
>
> (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and
>
> (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.
>
> (b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations:
>
> (1) You were seriously ill and were prevented from contacting us in person, in writing, or through a friend, relative, or other person.
>
> (2) There was a death or serious illness in your immediate family.

(3) Important records were destroyed or damaged by fire or other accidental cause.

(4) You were trying very hard to find necessary information to support your claim but did not find the information within the stated time periods.

(5) You asked us for additional information explaining our action within the time limit, and within 60 days of receiving the explanation you requested reconsideration or a hearing, or within 30 days of receiving the explanation you requested Appeals Council review or filed a civil suit.

(6) We gave you incorrect or incomplete information about when and how to request administrative review or to file a civil suit.

(7) You did not receive notice of the initial determination or decision.

(8) You sent the request to another Government agency in good faith within the time limit and the request did not reach us until after the time period had expired.

(9) Unusual or unavoidable circumstances exist, including the circumstances described in paragraph (a)(4) of this section, which show that you could not have known of the need to file timely, or which prevented you from filing timely.

As the Commissioner concedes (*see* Doc. 12 at 2 − 3), it has long been the law of this Circuit that the Appeals Council's dismissal of a request to review as untimely is a "final" decision subject to judicial review under § 405(g).  *See Langford v. Flemming*, 276 F.2d 215, 218 & n.4 (5th Cir. 1960) ("The Appeals Council refused to extend the time and accordingly refused to review the merits. The propriety of this administrative decision declining to extend time and review the merits … certainly is 'final'…"); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1238-39 (11th Cir. 1983) (holding that *Califano v. Sanders*, 430 U.S. 99 (1977), did not overrule

*Langford* and that judicial review of Appeals Council denials of requests for review remains available under § 405(g)). *See also Stone v. Heckler*, 778 F.2d 645, 648 (11th Cir. 1985) ("Although *Bloodsworth* has been explicitly or implicitly rejected by other circuit courts of appeal, it remains binding precedent in this circuit."); SSA Acquiescence Ruling 99-4(11), 1999 WL 1137369 (Oct. 26, 1999) (disagreeing with *Bloodsworth* but agreeing to provide notice to claimants within the Eleventh Circuit of their right to request judicial review of Appeals Council dismissals of requests for review). The parties agree that this Court reviews "the refusal by the Appeals Council to extend time and review the merits" for "abuse of discretion" (i.e. whether the refusal was "unreasonable or arbitrary"). The parties also agree that, when the Appeals Council has dismissed a request for review, this Court may not review the merits of the underlying decision denying benefits.[3] Rather, "[a]ll that this Court may consider … is whether the Appeals Council abused its discretion in dismissing Plaintiff's tardy request for review." *Waters v. Massanari*, 184 F. Supp. 2d 1333, 1341 (N.D. Ga. 2001) (Beverly Martin, J.).[4]

Quarles also argues, in the alternative, that the Court should order a remand

---

[3] Despite conceding this, Quarles's brief (Doc. 11) nevertheless contains extensive substantive discussion of both the ALJ's decision and Quarles's administrative representative's brief to the Appeals Council requesting review.

[4] *Waters* reached this determination after "canvassing … post-*Langford* decisions" and reasoning that "[t]o hold otherwise would essentially read out of the administrative scheme the requirement that a claimant seek review at the Appeals Council level." 184 F. Supp. 2d at 1340-41. The Eleventh Circuit has not indicated otherwise, and other district courts in this Circuit have agreed with *Waters*. *See Ford v. Astrue*, No. 3:06CV366/LAC/MD, 2008 WL 168890, at *1 (N.D. Fla. Jan. 16, 2008); *Maxwell v. Comm'r of Soc. Sec.*, No. 6:12-CV-5-ORL-GJK, 2013 WL 298267, at *2 (M.D. Fla. Jan. 25, 2013); *Walker v. Comm'r of Soc. Sec.*, No. 6:12-CV-1025-ORL-DAB, 2013 WL 3833199, at *3 (M.D. Fla. July 23, 2013); *Vargas v. Colvin*, No. 14-20133-CR, 2014 WL 6384150, at *3 (S.D. Fla. Oct. 28, 2014), *report and recommendation adopted*, 2014 WL 6455366 (S.D. Fla. Nov. 13, 2014).

under sentence six of § 405(g) for consideration of new evidence.

> Sentence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court:
>
> > The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....
>
> 42 U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S. Ct. 2658, 2664, 110 L. Ed. 2d 563 (1990); *see Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S. Ct. 2157, 2163, 115 L. Ed. 2d 78 (1991) (The sixth sentence allows the taking of "new evidence ... that was not available to the claimant at the time of the administrative proceeding."). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. *See Milano v. Bowen,* 809 F.2d 763, 766–67 (11th Cir. 1987) (ordering a sentence six remand based on evidence first properly submitted to the district court); *Cherry v. Heckler,* 760 F.2d 1186, 1193–94 (11th Cir.1985) (same); *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir.1980) (same); *Johnson v. Harris,* 612 F.2d 993, 998–99 (5th Cir.1980) (same); *see also Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir.1999) (new evidence will not be considered for the first time on appeal in this Court for the purposes of a sentence six remand).
>
> [S]ettled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007).

## IV.   <u>Analysis</u>

### A.   **Claim 1 (Abuse of Discretion in Dismissing Review)**

In arguing that the Appeals Council abused its discretion in dismissing her request for review as untimely, Quarles relies almost exclusively on the reasoning in *Vargas v. Colvin*, No. 14-20133-CR, 2014 WL 6384150 (S.D. Fla. Oct. 28, 2014) (Valle, M.J.), *report and recommendation adopted*, 2014 WL 6455366 (S.D. Fla. Nov. 13, 2014) (Bloom, J.), which she asserts "considered the exact issue as presented here…" (Doc. 11 at 6 − 8). In response to Claim 1, the Commissioner's brief essentially restates the reasoning of the Appeals Council's order of dismissal and conclusorily suggests, without citation to authority, that the Appeals Council acted "within its discretion to dismiss Plaintiff's request for review." (Doc. 12 at 3). The Commissioner's brief does not even acknowledge, much less substantively discuss, *Vargas*. The Commissioner also offered little discussion of *Vargas* at oral argument. This may, however, have been a strategic decision, as Quarles herself does not directly address the Appeals Council's stated reason for denying her an extension of time to request review: that her "representative ha[d] not provided evidence that the informal request for review was actually submitted to the Council prior to March 13, 2015."

After discussing the "good cause" standard set forth in 20 C.F.R. §§ 404.911 and 416.1411, the *Vargas* court observed, "[a]s further guidance, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ('HALLEX') provides examples of the types of circumstances constituting good cause for an extension of time. *See* HALLEX I–3–0–60(E)(3). According to HALLEX, for instance, good cause for an extension of time may exist where '[t]he claimant relied

on a representative to timely file a request, and the representative failed to do so.'
*Id.*"  2014 WL 6384150, at *4 (footnote omitted).  The court then determined, "under
the circumstances" of that case, that the Appeals Council had abused its discretion
in not finding good cause to excuse late filing of the claimant's request for review, as
follows:

> In this case, the Appeals Council gave three reasons why it found that
> Plaintiff had not shown good cause for extending the deadline for filing
> her request for review by two days. First, the Appeals Council noted
> that the Notice of Decision was mailed to valid addresses for both
> Plaintiff and her counsel on June 8, 2012, the date the ALJ issued his
> decision (thus the 65–day filing deadline was August 13, 2012, but
> Plaintiff filed her request for review on August 15, 2012). Second, the
> Appeals Council found that there was no evidence that those addresses
> had been changed before the filing deadline, and Plaintiff had listed
> those same addresses on her untimely request for review. Lastly,
> although Plaintiff's counsel swore he had received the Notice of
> Decision eight days after the date it was issued (and not within the
> presumptive 5–day window), the Appeals Council found that there was
> no evidence that Plaintiff had failed to receive the Notice of Decision
> within the presumptive 5–day window. Thus, the Appeals Council
> determined it had no reason to believe that Plaintiff had also received
> the Notice of Decision late and, consequently, no good cause existed to
> extend the filing deadline.

> On appeal to this Court, Plaintiff argues-and the undersigned agrees-
> that the Appeals Council's no-good-cause determination was an abuse
> of discretion **given the facts of this case**. To begin with, the record
> shows that Plaintiff's request for review was filed only two days late.
> The record also shows, moreover, that the Appeals Council's
> subsequent actions (and inactions) lulled Plaintiff and her counsel into
> believing that her request for review had been accepted as timely and
> was being reviewed on the merits. For example, instead of notifying
> Plaintiff in a reasonably timely manner that her request for review
> (filed on August 15, 2012) was considered late, the Appeals Council
> sent Plaintiff a letter dated September 10, 2012 inviting her to submit
> new evidence or "a statement about the facts and the law in this case"
> within 25 days of the date of the letter.  The effect of this letter-sent
> less than one month after Plaintiff had filed her request for review-was
> twofold. First, it caused Plaintiff to expend even more time and

resources working on *the merits* of her appeal. Second, it misled Plaintiff and her counsel into believing that her appeal was being reviewed on its merits when, in fact, it was not.

In response to the Appeals Council's invitation for more information, on October 5, 2012, Plaintiff filed a Memorandum in Support of Request for Review, which began with this opening statement: "This case is before the Appeals Council pursuant to a timely request for review."[7] Despite this statement evincing Plaintiff's belief that her request for review had been filed timely, the Appeals Council still made no effort at or around that time to inform Plaintiff that it deemed her request for review to be untimely.

> FN7 – Plaintiff's Memorandum goes on to set forth a thoughtful discussion (which does not appear to have been written overnight) as to why Plaintiff believed that the ALJ erred. Why the Appeals Council would ask Plaintiff to continue working on the substance of her appeal, when it ultimately believed that the appeal was procedurally deficient, is troubling.

Indeed, it was only *after* this back-and-forth-and *after* more than a year had passed since Plaintiff had filed her request for review-that the Appeals Council first notified Plaintiff via a letter dated September 25, *2013* that her request for review had been filed two days too late.[8] In response to the Appeals Council's invitation for an explanation as to why her request for review had been filed late, on October 1, 2013, Plaintiff submitted a Statement of Good Cause for Late Filing to the Appeals Council. According to the Statement, Plaintiff's request for review was timely (or good cause for an extension existed) because it had been filed within 60 days of the date that Plaintiff's counsel had actually received the Notice of Decision. To corroborate the Statement, Plaintiff's counsel submitted an affidavit, together with other documentation, showing that he had not received the Notice of Decision within 5 days of the date on it, but rather within 8 days, and that he had filed Plaintiff's request for review within 60 days of the day he received it. Although the Appeals Council appeared to accept Plaintiff's counsel's explanation that *he* had not received the Notice of Decision within the 5–day presumptive window, it nonetheless dismissed Plaintiff's request for review as untimely without good cause because Plaintiff had failed to show that she too had received the Notice of Decision late.

> FN8 – Conspicuously absent from this letter was any mention of the fact that the Appeals Council had previously invited

Plaintiff to submit new evidence and argument related to the merits of her appeal, and that Plaintiff had obliged the Appeals Council's request by preparing and filing an additional memorandum.

The undersigned finds the Appeals Council's dismissal to be arbitrary and unreasonable under the circumstances. Not only did the Appeals Council fail to appreciate the foregoing circumstances surrounding Plaintiff's filing of her request for review-including its own yearlong delay in notifying Plaintiff that her request for review was untimely, during which Plaintiff expended additional time and resources on the merits of her appeal-but it also overlooked its own policy statements about when good cause for extending the filing deadline may exist. Indeed, HALLEX I–3–0–60(E)(3) specifically states that good cause may exist where "[t]he claimant relied on a representative to timely file a request, and the representative failed to do so."

Based on the record before the Court, that is exactly what happened in this case. Plaintiff relied on her lawyer to file her request for review on time, but her lawyer failed to do so because of his late receipt of the Notice of Decision. Defendant's sole response to this point is to emphasize that HALLEX I–3–0–60(E)(3) merely provides examples of when good cause "may" exist. Defendant also cites a note to HALLEX I–3–0–60(E)(3), which states that: "The [Appeals Council] must not infer good cause for late filing merely because a claimant has a representative, but must consider a claimant's good cause statement indicating reliance on a representative." According to Defendant, the Appeals Council's dismissal was not arbitrary or unreasonable because Plaintiff never submitted a personal statement indicating reliance on her lawyer to file her appeal on time.

Defendant's arguments, however, ring hollow. Although Plaintiff's Statement of Good Cause for Late Filing did not expressly state that she had relied on her lawyer to file her request for review on time and that he failed to do so, it does indicate as much. Tellingly, the Statement and its supporting documentation, like all the other relevant papers Plaintiff filed in this case, were all filed by Plaintiff's counsel on her behalf. To fault Plaintiff for failing to take an additional and unrequired step of filing her own affidavit or other documentation expressly stating that she had relied on her lawyer to timely file her request for review, especially when Plaintiff's Statement already indicated as much, is arbitrary and unreasonable.

*Vargas*, 2014 WL 6384150, at *4-6 (record citations and one footnote omitted) (emphasis added).

For several reasons, the Court does not find *Vargas*'s reasoning persuasive in this action.   First, Quarles relies heavily on *Vargas*'s determination that the Appeals Council abused its discretion when, among other considerations, it "overlooked its own policy statements" in the HALLEX regarding reliance on a representative to timely file a request for review.   However, HALLEX is an SSA internal manual that "does not carry the authority of law."  *E.g.*, *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).[5]  The undersigned has recently declined to consider a claim that the Commissioner's alleged violation of a HALLEX procedure constituted reversible error because that document does not have the force of law so as to bind the Commissioner.  *See Brownlow v. Colvin*, Civil Action No. 15-00392-N, 2016 WL 814953, at *5 n.7 (S.D. Ala. Feb. 29, 2016).   Though no binding precedent currently exists on the issue, the undersigned based this determination on "the greater weight of current circuit authority," *id.* (citing, *e.g.*, *Davenport v. Astrue*, 417 F. App'x 544, 547 (7th Cir. Mar. 30, 2011) (per curiam) (unpublished) ("Circuits are split over whether the HALLEX creates enforceable rights." (citing Second, Sixth, Ninth, and D.C. Circuit authority as holding it does not, with only the Fifth Circuit

---

[5] As *Vargas* itself noted, "HALLEX, among other things, 'defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels.' HALLEX I–1–0–1. 'It also includes policy statements resulting from Appeals Council en banc meetings under the authority of the Appeals Council Chair.' *Id.*"   *Vargas*, 2014 WL 6384150, at *4 n.5.   "The text of [HALLEX I-1-0-1, entitled "PURPOSE,"] indicates that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000).

holding that <u>prejudicial</u> violations of the HALLEX can entitle a claimant to relief)), and the Eleventh Circuit's determination, albeit unpublished,[6] that another SSA internal document, the Program Operations Manual System (POMS), "does not have the force of law, and, therefore, the Commissioner's alleged failure to adhere to the POMS does not" create an enforceable right. *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (per curiam) (unpublished). *See also Am. Trucking Ass'n, Inc. v. United States*, 688 F.2d 1337, 1341 (11th Cir. 1982) ("Nonlegislative rules are those not promulgated pursuant to a power to issue regulations with binding effect; they are merely an expression of how the agency interprets and intends to enforce its governing statute, how it intends to exercise a discretionary function, or the procedure an agency intends to use in exercising its powers."), *rev'd on other grounds*, *I.C.C. v. Am. Trucking Ass'ns, Inc.*, 467 U.S. 354 (1984); *Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[N]ot all agency publications are of binding force…"); *Owens v. Heckler*, 748 F.2d 1511, 1516 n.5 (11th Cir. 1984) (per curiam) ("The claimant's first argument presumes, of course, that the judiciary has the power to hold the agency to its own rules. Such is not always the case. *See Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S. Ct. 1468, 1471, 67 L. Ed. 2d 685 (1981) (concluding that claims manual rules promulgated for claims representatives do not bind the SSA). Indeed, were we faced only with a claim based on a claims manual rule, *Hansen* would preclude

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

us from announcing that the Administration must be bound by it." (dicta)). Neither *Vargas* nor Quarles's arguments persuade the undersigned to depart from this previous determination.[7]  Because the HALLEX is not binding on the Commissioner, to the extent she deviated from its terms in Quarles's case, this does not constitute a reversible abuse of discretion.

Even assuming that the HALLEX is binding on the SSA,[8] the Appeals Counsel did not violate the provision discussed in *Vargas*.  Immediately after

---

[7]     Quarles cites, albeit in a footnote and without explanation, to *Howard v. Astrue*, 505 F. Supp. 2d 1298 (S.D. Ala. 2007) (Cassady, M.J.).  In *Howard*, another judge of this district, adopting the minority reasoning of the Fifth Circuit without examining the contrary reasoning of other circuits, found that a prejudicial violation of the HALLEX constituted reversible error.  *See* 505 F. Supp. 2d at 1301-02 (citing *Newton v. Apfel*, 209 F.3d 448, 459 (2000) ("While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' ... Should a violation of the HALLEX prejudice the claimant, 'the result cannot stand.' " (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Sept. 9, 1981) (per curiam))).

        First, the Court is in no way bound to follow *Howard*'s reasoning.  *See United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district.").  Second, the judge in *Howard* appears to have been particularly swayed by the strong exhortations of *Hall v. Schweiker*, which is binding authority in this Circuit, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), and would seem to support the determination that a HALLEX violation can constitute a basis for reversible error, at least where prejudice is shown.  However, since *Howard* was decided, the Eleventh Circuit has (1) rejected a similar argument regarding the POMS, another non-binding internal SSA manual, *see Wells*, 430 F. App'x at 786-87 ("Wells's reliance on *Hall v. Schweiker*, 660 F.2d 116 (5th Cir.  1981), is misplaced, because, unlike the ruling at issue in Hall, the POMS does not constitute formal rules that bind the SSA.  *See ... Hall*, 660 F.2d at 119 n.4 (addressing Social Security Ruling 79–19 and noting that Social Security Rulings 'are binding on all components of the Administration') (quotations omitted)." (footnote omitted)); and (2) expressed skepticism that the Commissioner is bound to follow the HALLEX, *see infra*, n.8.

[8] The Eleventh Circuit has previously characterized this as "a very big assumption." *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (per curiam) (unpublished) (even if HALLEX was binding, ALJ did not contravene its procedures).

stating that good cause may be shown where "the claimant relied on a representative to timely file a request, and the representative failed to do so," HALLEX further provides: "The AC must not infer good cause for late filing merely because a claimant has a representative, but must consider a claimant's good cause statement indicating reliance on a representative." HALLEX I–3–0–60(E)(3), 1995 WL 1671770. Quarles herself submitted no good cause statement to the Appeals Council, and her representative's good cause statement did not include "reliance on a representative" as a ground to excuse the tardy filing. Thus, under the plain terms of the HALLEX, the Appeals Counsel did not err, much less abuse its discretion, in failing to infer such a reason.[9]

Moreover, consideration of the HALLEX was only part of the *Vargas* court's reasoning in finding an abuse of discretion. *Vargas* explicitly found "an abuse of discretion **given the facts of th[at] case**[,]" 2014 WL 6384150, at *4 (emphasis added), which were far more egregious than those present here. In this case, (1) the

---

[9] Similarly, the Court rejects Quarles's insinuation, made in a footnote, that, prior to dismissing her request for review, the Appeals Council was required to scour her administrative record, take note of evidence therein indicating that she has been diagnosed with lifelong mental retardation, and thus infer that "mental[ or] educational ... limitations ... prevented [Quarles] from filing a timely request or from understanding or knowing about the need to file a timely request for review." 20 C.F.R. §§ 404.911(a)(4), 416.1411(a)(4). The Social Security regulations are clear that a claimant is responsible for stating "the reasons why the request for review was not filed within the stated time period" in her request for extension and bears the burden of "show[ing] that [she] had good cause for missing the deadline." 20 C.F.R. §§ 404.968(b), 416.1468(b). *See also* Social Security Ruling (SSR) 91-5P, 1991 WL 208067, at *2 (July 1, 1991) ("When a claimant **presents evidence** that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, **and the claimant had no one legally responsible for prosecuting the claim** (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review." (emphasis added)).

record indicates that Quarles's request for review was not received by the Appeals Council until almost two months after the deadline (significantly longer than the two days' tardiness in *Vargas*); (2) the Appeals Council gave reasonably prompt notice that the request for review was deemed late and allowed Quarles thirty days to show good cause for the late filing (R. 9 – 10) (unlike the Appeals Council in *Vargas*, who initially misled the claimant and her representative into believing that it was reviewing the merits of the untimely request for review); and (3) Quarles's representative submitted no documentation with his brief Statement of Good Cause to support his representation that he had "faxed [the request for review] to [the Appeals Council] on January 14, 2015" (R. 7) (unlike the representative in *Vargas*, who submitted "an affidavit, together with other documentation," to support his Statement of Good Cause).   *See Waters*, 184 F. Supp. 2d at 1341-42 (finding no abuse of discretion in Appeals Council's denial of untimely request for review where, *inter alia*, the claimant did not submit any affidavits or other evidence supportive of her alleged attempt to timely request review).   Indeed, the notice sent by the Appeals Council indicating that Quarles's request for review was deemed tardy stated that Quarles "should send … any evidence that supports [her] explanation" of good cause.  (R. 9).[10]

---

[10] In sending Quarles reasonably prompt notice of her untimely request for review and granting her an opportunity to show good cause for the untimely request, the Appeals Council acted much more diligently than in *Waters*, where the district court nevertheless found no abuse of discretion in the Council's dismissal of an untimely request for review. There, the claimant's representative filed the request for review, and a request for extension of time to do so, in July 1998.  The Appeals Council did not respond to the requests until December 28, 1999, when it issued an order denying the request for extension and dismissing the request for review as untimely.  During the intervening 18-

Additionally, in *Vargas*, the tardy filing was due to the representative's late receipt of notice of the ALJ's unfavorable decision, a circumstance seemly beyond the representative's control; moreover, it appears the representative diligently attempted to secure timely review based on the date he received the notice. The record here does not show similar diligence. Accepting the representations of Quarles's representative that he or his assistant first faxed the request for review on January 14, 2015, that left the representative nine days to follow up and make sure the request had been timely received and processed. The representative did not do so, however, until almost two months after the deadline had passed.

Quarles has failed to convince the Court that the Commissioner abused her discretion in denying an extension of time to file her request for review. Accordingly, the Court **OVERRULES** Quarles's assertions of error in Claim 1.

## B.    Claim 2 (New and Material Evidence)

Quarles argues, in the alternative, the remand should be ordered under sentence six of § 405(g) for the Appeals Council to consider new and material evidence bearing on its dismissal. This evidence consists of an affidavit, dated November 13, 2015, sworn by the office manager of Quarles's administrative representative, which avers: "On January 14, 2015, I faxed an appeal to the Appeals

---

month period, the claimant's representative submitted to the Council additional medical records on six occasions and two letter inquiries as to the status of the appeal, with the Council issuing no response to any of these submissions. *Waters*, 184 F. Supp. 2d at 1335-36, 1342. While finding "such silence disturbing, particularly from an agency which is not supposed to be in an adversarial role vis-a-vis disability claimants[,]" the *Waters* court nevertheless found that "the Appeals Council's action or, more accurately, inaction, does not rise to the level of misleading Plaintiff that her request for review was timely or would be considered as such." *Id.* at 1342.

Counsel on behalf of Jennifer Quarles ... I inquired with the Appeals Council on March 13, 2015, and was told there was no record of the appeal.  I re-submitted the appeal by fax on that date."  (Doc. 11-2 at 1).  Attached to the affidavit are an additional copy of the March 13, 2015 telecopier cover sheet (*id.* at 2) found in the administrative record accompanying the late-filed request for review; another telecopier cover sheet dated January 14, 2015, purportedly faxed to the Appeals Council along with a timely request for review on that same date (*id.* at 3); and a letter from Quarles's administrative representative dated November 13, 2015, informing her present counsel that he cannot find a "way to replicate the fax confirmation that is missing in [Quarles's] file" and submitting the affidavit and telecopier cover sheets "in the absence of this proof" (*id.* at 4).

> In order to prevail on a claim that [a sentence-six ]remand is appropriate, a claimant must establish that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)...

*Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

"There is no doubt that [Quarles's] evidence is new and noncumulative. It is 'new' in that it was not previously before the A[ppeals Council].  It is 'noncumulative' as it provides ... evidence in support of [Quarles's] allegations of [good cause to excuse her tardy request for review]— ... evidence which the A[ppeal Council] previously had found to be wanting."  *Id.*  Also, "the evidence is 'material' in that there is a reasonable possibility that the new evidence would change the

administrative outcome[,]" *id.*, since a lack of evidence to support her good cause statement was the sole stated reason given by the Appeals Council for failing to grant Quarles additional time to request review.  Thus, if Quarles shows "good cause for failure to submit the evidence" to the Appeals Council, she is due a sentence-six remand.

Quarles asserts that there is good cause for her failure to submit the office manager's affidavit because it "did not exist at the time of the administrative proceedings…" *Id. Accord, e.g.*, *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) ("[T]here is good cause for failing to present the evidence because it did not exist at the time of the administrative hearing or the district court proceedings."). Quarles bases this assertion solely on the fact that the affidavit itself post-dates the Appeals Council's order of dismissal and was thus "not in existence or available to the claimant at the time of the administrative proceeding."

This argument, however, elevates form over substance.  An affidavit is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths…" *Black's Law Dictionary* (8th ed. 2004). Technically speaking, the "facts written down and sworn to" in the affidavit are evidence, while the affidavit is simply an instrument for presenting that evidence.[11]

---

[11] The cases Quarles cites in support of her Claim 2 argument concerned reports of medical evaluations occurring <u>after</u> the Commissioner's final decision was rendered – thus, neither the reports themselves, <u>nor the information in those reports</u>, was available at the administrative level. *See Jones v. Colvin*, No. 1:11CV989-WC, 2013 WL 842704, at *4 (M.D. Ala. Mar. 6, 2013) ("Plaintiff argues there is good cause for her failure to submit the evidence at the administrative level because the evidence was not available at that time. Indeed, the parties agree the evaluation was not performed and Dr. George's report was not generated until after the Appeals Council had declined review."); *Mitchell v. Apfel*, Civil

"Here, … the evidence" – i.e., the office manager's factual knowledge, as well as the January 14, 2015 telecopier cover sheet – "was available at the administrative proceeding; it simply was not considered by the Appeals Council because it was not timely filed." *Milano*, 809 F.2d at 767.

Nevertheless, the fact that evidence may have been available at the time of the administrative proceedings does not foreclose a finding of "good cause" for failure to present it there.  As the Commissioner points out,

> the good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. The requirement was designed to prevent claimants from attempting to withhold evidence "with the idea of 'obtaining another bite of the apple' if the [Commissioner] decides that the claimant is not disabled." *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 834 (3d Cir. 1984) (citation omitted). The good cause requirement was designed to avoid the danger of "encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal." *Id.*

*Id.*  In *Milano*, the claimant mailed additional medical evidence to the Appeals Council one day after the extension that she had been granted to submit additional evidence had expired.  "The supplemental items submitted to the Appeals Council … were neither included in the administrative record nor mentioned when the request for review was denied."  *Id.* at 765.  While "recogniz[ing] that good cause for failing to present evidence may exist where the evidence did not exist at the time of the administrative proceeding[,]" the Eleventh Circuit determined that the claimant's "evidence was available at the administrative proceeding; it simply was

---

Action No. 98-W-1160-N, 1999 WL 33100499, at *1-2 (M.D. Ala. Sept. 17, 1999) (finding "good cause" to remand under sentence six based on the report of a psychological evaluation conducted nearly seven months after the district court action was filed).

not considered by the Appeals Council because it was not timely filed." *Id.* at 766-67.

The Eleventh Circuit "nonetheless conclude[d] that a filing that was mailed one day after the extended time period … satisfies the good cause requirement of § 405(g)." *Id.* at 767. The court explained, *inter alia*:

> [W]e believe that the good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process. The requirement was designed to prevent claimants from attempting to withhold evidence "with the idea of 'obtaining another bite of the apple' if the Secretary decides that the claimant is not disabled." *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 834 (3d Cir. 1984) (citation omitted). The good cause requirement was designed to avoid the danger of "encouraging claimants to seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal." *Id.* Milano's de minimus procedural default does not reflect any bad faith attempt to manipulate the administrative process. Indeed, it suggests an attempt, though unsuccessful, to fully comply with administrative requirements.

*Id.*

The record in this case also does not "reflect any bad faith attempt to manipulate the administrative process." Nothing in the Appeals Council's dismissal order indicates that there were credibility issues with Quarles's representative or the representations in his good cause statement. Rather, the Appeals Council's sole given reason for not finding good cause to extend the time to request review was that the representative had "not provided evidence that the informal request for review was actually submitted to the Council prior to March 13, 2015." (R. 4). However, neither the Appeals Council at the administrative level, nor the Commissioner here, has cited any authority under which a claimant's statement of

good cause is required to be supported by contemporaneously submitted evidence.[12] The regulations governing requests for extension of time to request review require only that such a request "be in writing," "be filed with the Appeals Council," and "give the reasons why the request for review was not filed within the stated time period." 20 C.F.R. §§ 404.968(b), 416.1468(b).  Quarles's representative's good cause statement clearly meets those requirements.  The regulations governing the "good cause" standard are also silent on any evidentiary requirements.  20 C.F.R. §§ 404.911 and 416.1411.[13]  As with the *Milano* claimant, the record here "suggests an attempt, though unsuccessful, to fully comply with administrative requirements."

In its notice to Quarles that her request for review had been filed late, the Appeals Council did advise: "You should send us a statement showing the reason(s) why you did not file the request for review within 60 days.  You should send us any evidence that supports your explanation." (R. 9).  However, this provision does not clearly indicate that statements of good cause must <u>always</u> be supported by evidence, such the failure to include evidence, <u>standing alone</u>, would be fatal to a request for extension.[14]

---

[12] The Commissioner's brief cites no such authority, nor could counsel for the Commissioner identify any such authority at oral argument when asked.

[13] The HALLEX is similarly silent as to requiring a request for extension of time to be supported by evidence.  *See* HALLEX I-3-0-60(E), 1995 WL 1671770.  Under SSR 91-5P, the Commissioner does require "evidence that mental incapacity may have prevented [a claimant] from understanding the review process."  1991 WL 208067, at *2.  However, Quarles did not rely on mental incapacity in her statement of good cause.

[14] Indeed, the Appeals Council's request to be sent "any evidence," rather than simply "evidence," appears to assume that there may be some situations in which there is no evidence to support an explanation.

Because it was not clear at the administrative level that she was required to support her statement of good cause with evidence, and because that was the Appeals Council's sole ground for denying her an extension of time to request review, the Court finds good cause here for Quarles's failure to present the office manager's testimony and supporting exhibits to the Appeals Council.[15]  Accordingly, this case is due to be **REMANDED** to the Commissioner under sentence six of § 405(g).  On remand, the Commissioner shall consider Quarles's new evidence (Doc. 11-2) in determining whether she is due an extension of time to request review under 20 C.F.R. §§ 404.968(b), 416.1468(b).[16]

### V.   <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that Quarles's case is **REMANDED** to the Commissioner **<u>under sentence six of 42 U.S.C. § 405(g)</u>** for proceedings consistent with this opinion.  The Commissioner is reminded of her obligations to "file with the court any … additional and modified findings of fact and decision, and, [if] the Commissioner has not made a decision fully favorable

---

[15] This determination might seem to be inconsistent with the Court's reasoning in Claim 1. However, Claim 1 was decided under a deferential "abuse of discretion" standard.  Quarles raised no argument challenging the Appeals Council's requirement of evidence, and given that the notice of tardy filing made some mention of presenting supporting evidence, Quarles failed to meet her burden of showing an abuse of discretion in the Appeals Council's stated reason for denying an extension of time.  In contrast, "[t]he judicial determination of whether new evidence renders appropriate a remand to the [Commissioner] is a *de novo* proceeding." *Hyde*, 823 F.2d at 458-59.

[16] As in *Milano*, this Court finds remand to be appropriate "on the particular facts presented in this case…"  *Milano*, 809 F.2d at 767.  The Court emphasizes that Quarles's new evidence is relevant to "the reasons why [her] request for review was not filed within the stated time period" that she <u>actually presented</u> to the Appeals Council prior to its dismissal of her request for review.  This opinion in no way stands for the proposition that "sentence six" remands can be used as a matter of course to raise additional "reasons" that could have been, but were not, presented at the administrative level.

to [Quarles], a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."  42 U.S.C. § 405(g).[17]

**DONE** and **ORDERED** this the 10th day of August 2016.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] "In a sentence-six remand, the statutory provision itself specifically requires the Commissioner to return to district court to file additional or modified findings of fact after the new evidence is heard. Because the parties must return to district court after the remand proceedings to file the Commissioner's findings of fact, the district court retains jurisdiction over the case throughout the remand proceedings. Thus, unlike a sentence-four remand, a sentence-six remand is not a final judgment under the EAJA, and the window for filing an EAJA fee application does not open until judgment is entered in the district court following completion of the remand proceedings."  *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996) (citations omitted) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98-99, 102 (1991)).