IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER A. QUARLES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15-00572-N |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer A. Quarles brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*  Upon consideration of the parties' briefs (Docs. 26, 27) and those portions of the administrative record (Docs. 10, 24) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 16, 17).  With the Court's consent, the parties jointly waived the opportunity for oral argument.  (*See* Docs. 30, 31).

# I. *Background*

On February 14, 2013, Quarles filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning November 1, 2012.[2] Quarles requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review after her applications were initially denied; the hearing was held on July 30, 2014. On November 19, 2014, the ALJ issued an unfavorable decision on Quarles's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* R. 22 – 41).

Quarles requested review of the ALJ's decision with the Appeals Council for the Office of Disability Adjudication and Review, but on September 13, 2015, the Appeals Council dismissed the request for review after finding that the request had not been timely filed and that Quarles had failed to show good cause to extend the time for filing the request. (R. 1 – 5). On November 11, 2015, Quarles initiated this action to challenge the Appeals Council's dismissal. (Doc. 1).

After receiving briefing from the parties (*see* Docs. 11, 12,) and holding oral argument, the undersigned entered an order on August 10, 2016, remanding this case to the Commissioner under sentence six of § 405(g) for consideration of new and material evidence. (*See* Doc. 19). After considering the new evidence, the

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Appeals Council issued a decision on March 30, 2017, setting aside its earlier dismissal of Quarles's request for review and instead denying Quarles's request for review (R. 638 – 642), making that decision the Commissioner's new final decision on Quarles's applications.

The Commissioner filed this new final decision and a record of the additional administrative proceeding with the Court on June 26, 2017. (Doc. 24). The Court then reopened this action and set a briefing schedule on the new decision. (*See* Docs. 23, 25). The parties timely filed their briefs (Docs. 26, 27), and this action for judicial review of the Commissioner's March 30, 2017 final decision is now under submission (*see* Doc. 31). *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that

come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679

---

[3] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting

decision only to determine whether it is supported by substantial evidence.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).

"This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III. *Analysis*

#### a. **Summary of the ALJ's Decision**

At Step One, the ALJ determined that Quarles met the applicable insured status requirements through December 31, 2016, and that she had not engaged in substantial gainful activity since the alleged disability onset date, November 1, 2012. (R. 27). At Step Two, the ALJ determined that Quarles had the following severe impairments: diabetes mellitus with neuropathy and retinopathy; hypertension; obesity; depression; and borderline intellectual functioning. (R. 27 – 28). At Step Three, the ALJ found that Quarles did not have an impairment or

combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 28 – 29).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
> 
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
> 
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Quarles had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[6] except she can perform

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

occasional pushing or pulling with the upper and lower extremities. She can do no climbing of ladders, ropes, or scaffolds. She can perform occasional climbing of ramps and stairs. She can perform occasional balancing, kneeling, crouching, and stooping. She can perform no crawling. She can perform frequent handling, fingering, and feeling. She must avoid concentrated exposure to extreme heat, cold, and vibration. She is able to avoid common workplace hazards. She does not pose danger to herself or others. She can perform tasks that have no fine detail work. She can have no exposure to dangerous machinery or unprotected heights. She can perform no work requiring walking on uneven terrain. During a regularly scheduled workday, or the equivalent thereof, she can understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions. She can do simple, routine, and repetitive tasks, but is unable to do so with detailed or complex tasks." (R. 29 – 39).

Based on this RFC, the ALJ determined that Quarles was unable to perform any past relevant work. (R. 39). At Step Five, after taking testimony from a vocational expert, the ALJ found that there exist significant numbers of jobs in the national economy that Quarles can perform given her RFC, age, education, and work experience. (R. 39 – 40). Thus, the ALJ found that Quarles was not disabled under the Social Security Act. (R. 40 – 41).

### b. Claim 1 – Dr. Tocci's Opinion

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

Among the medical opinions of record reviewed by the ALJ was an April 16,

2013 report of a mental status examination by Dr. Nina Tocci, which the ALJ assigned "significant weight…because Dr. Tocci evaluated [Quarles] and has the objective medical evidence to support an opinion related to her specialty." (R. 33). Quarles claims that the ALJ reversibly erred in doing so because Dr. Tocci's opinions that Quarles "does not appear to have issues that reach clinical significance" and "appears to be functioning within the low average range of intellectual ability" (R. 33, 375) are inconsistent with the ALJ's Step Two determination that Quarles suffered from two "severe" mental impairments, depression and borderline intellectual functioning (R. 27). Quarles asserts that the ALJ thus created a conflict in the record that the ALJ failed to resolve. However, the undersigned agrees with the Commissioner that there was no such conflict.

"At step two…a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). On the other hand, "clinical significance" is a medical term of art that, while not easily susceptible to one definition,[7] "relates to *the magnitude of the observed effect* **and whether the**

---

[7] *See generally* Sarah M.R. Cravens, *The Usage and Meaning of "Clinical*

**magnitude or 'effect size' is big enough to consider changes to clinical care**." Andrea C. Skelly, *Probability, proof, and clinical significance*, Evidence-Based Spine-Care Journal, Nov. 2011, at 9 (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3506143/ (last visited Dec. 11, 2017)) (emphasis added). *See also* Elizabeth Heavey, Ph.D, RN, CNM, *Differentiating statistical significance and clinical significance*, American Nurse Today, May 2015, at 26 (https://www.brockport.edu/daily_eagle/doc/2015-04/item_8038_7659.pdf (last visited Dec. 11, 2017) ("A difference is deemed clinically significant when experts in the field believe a statistically significant finding is substantial enough to be clinically important and thus should direct the course of patient care."); Clifford S. Goodman, PhD, HTA 101: Introduction to Health Technology Assessment, May 2014, at Glossary (https://www.nlm.nih.gov/nichsr/hta101/ta101013.html (last visited Dec. 12, 2017)) ("**Clinical significance**: a conclusion that an intervention has an effect that is of practical meaning to patients and health care providers."). Thus, an SSA Step Two administrative determination that an impairment is "severe" is not inconsistent with a medical determination that the same impairment is not one of "clinical significance" requiring a change in treatment.

Similarly, a Step Two finding that Quarles's mental impairments have more than a minimal effect on her ability to do work is not inconsistent with a finding that she is nevertheless "functioning within the low average range of intellectual

---

*Significance" in Drug-Related Litigation*, 59 Wash. & Lee L. Rev. 553 (2002) (discussing the ambiguity and subjectivity of "clinical significance").

ability." *Cf. Moore,* 405 F.3d at 1213 n.6 ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has various leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit [a claimant's] ability to work…" (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986) (" 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")).[8]

Accordingly, the Court **OVERRULES** Quarles's first claim of reversible error.

### c. Claim 2 – Dr. Blanton's Opinion

Quarles next claims that the ALJ reversibly erred in rejecting the medical

---

[8] Quarles also claims that Dr. Tocci's diagnostic impressions of "Axis I: No diagnosis" and "Axis II: Deferred" conflict with the ALJ's Step Two findings of depression and borderline personality disorder as severe impairments. *See* Emily Stork, *A Competent Competency Standard: Should It Require A Mental Disease or Defect? A Debate Sparked by the Circuit Split over Axis II Personality Disorders and Competency to Stand Trial,* 44 Colum. Hum. Rts. L. Rev. 927, 938 (2013) ("Personality disorders are mental illnesses characterized by rigid, dysfunctional patterns of experience, perception, conduct, and reactions that significantly interfere with a person's functioning across place and time. Personality disorders are currently classified as Axis II disorders in the diagnostic scheme used by clinicians to diagnose psychiatric disorders. This diagnostic scheme is outlined by a series of Diagnostic and Statistical Manuals (DSMs), the most recent one being the revised fourth edition (DSM-IV-TR). Axis I disorders are mental disorders such as schizophrenia, bipolar disorder, and major depressive disorder, as well as anxiety disorders and substance abuse disorders." (footnotes omitted)). To the extent this did create a conflict in the evidence, the ALJ adequately resolved it. Dr. Tocci's opinion was given "significant," but not controlling, weight, and the ALJ's decision shows that the opinion was considered in conjunction with the other evidence of record regarding Quarles's mental impairments, with the ALJ ultimately concluding at Step Four that Quarles did have depression and borderline intellectual functioning, but that those impairments were "not disabling." (*See* R. 38).

opinion offered by consultative examining psychologist Dr. Donald Blanton. As noted previously, an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. This is because,

> "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Id.* An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *E.g.*, *Bloodsworth*, 703 F.2d at 1240.

The ALJ summarized Dr. Blanton's notes and opinion as follows:

Consultative examiner, Donald W. Blanton, Ph.D., evaluated the claimant on June 18, 2014 to determine disability. When the examiner queried the claimant, she responded that she was disabled because of her diabetes mellitus and neuropathy in her legs and feet. She also reported her arms hurt; she had vision problems with a history of laser surgery. She reported depression, but stated she had never been in a mental hospital. She reported she had been treated at the local mental health center for year. She was taking medications for her conditions. Upon mental status examination, she was sad looking. Her thoughts and conversation were logical. Her associations were intact. Her affect was flat but appropriate. She had no confusion. She complained of anxiety and was restless. Her mood was depressed and she cried frequently. Her sleep was poor and her appetite was fair. Her weight

was up-and-down. Her energy level was low. She appeared to have a slight psychomotor retardation. She had been suicidal in the past but she was not during the interview. There was no evidence of any hallucinations, delusions, or paranoia. She was assessing about her health problems. She was alert and oriented to time, person, place and situation. Her intelligence was tested at the low average range. Her insight was limited. Her judgment was fair for work and financial type decisions (Exhibit C22F [R. 601 – 604]).

During the day, she watched TV and folded laundry. She washed the dishes. Her sister did the cooking. She could make sandwiches. She had a driver's license and she was able to shop and handle her own money. She rarely did shopping due to foot pain. She had no friends outside of her family. She did not date. She did not attend parties are [sic] clubs. She did attend church. She spent most of her time watching TV. She sat on the porch but she did not read or do computer activities. She did not text or play video games. Dr. Blanton opined her IQ score was representative of the mild range of mental retardation and was likely a lifelong condition. He also opined that there was a possibility of some dementia due to long-term diabetes. He further opined that emotionally she appeared to have serious ongoing depression problems and she was encouraged to continue her treatment with mental health. Dr. Blanton further opined that in his opinion she had market limitations that seriously interfered with her ability to perform work-related activities on a day-to-day basis in a regular work setting in the following areas: understand detailed and complex instructions, carry out detailed or complex instructions, remember detailed and complex instructions, respond to customary work pressure, use judgment in detailed or complex work-related decisions, maintain attention, concentration, and pace for a period of at least two hours. He opined that her depression was present for at least tow years and her intellectual problems were present throughout her lifetime. He opined that the claimant demonstrated deficits in adaptive functioning due to her mental retardation likely manifested prior to the age of 22 in the following areas: communication, work, and functional academic skills (Exhibit C22F).

(R. 35 – 36). The ALJ stated: "Little weight is assigned to this opinion as it is not consistent with the objective medical evidence of record; nor is it consistent with Dr.

Tocci's opinion that has been assigned significant weight. As well, this opinion is not consistent with the claimant's work history and her ability to drive indicating the ability to take and pass a driver's license examination – atypical for an individual consistent with mental retardation diagnosis." (R. 36).

Contrary to Quarles's assertions, the undersigned finds that the ALJ stated the weight given to Dr. Blanton's opinion and the reasons therefor with sufficient "particularity," and that substantial evidence supports those reasons. As explained previously, Quarles has failed to show that the ALJ erred in assigning significant weight to Dr. Tocci's opinion. Moreover, contrary to Quarles's assertion that only Dr. Blanton administered "objective testing" at his examination, a review of Dr. Tocci's April 16, 2013 opinion (R. 373 – 375) indicates that she did so as well (e.g., math and counting exercises; naming "five famous people," "five cities," the current and immediate past Presidents of the United States; word association exercises). It should also be noted that Dr. Blanton only evaluated Quarles once, while Dr. Tocci had conducted a previous mental status examination of Quarles on March 22, 2011, which the ALJ also discussed in his opinion. (*See* R. 31 – 32). Dr. Tocci's findings from her 2011 examination were reasonably consistent with the findings from Dr. Tocci's 2013 examination.

The ALJ's finding that Dr. Blanton's opinion was inconsistent with Quarles's past work history as a home health aid and her ability to attain a driver's license, while perhaps not substantial evidence standing alone, is at least some evidence bolstering his decision to assign "little weight" to Dr. Blanton's opinion.

Considering this bolstering evidence together with Dr. Tocci's opinion, the undersigned finds that the ALJ's decision to reject Dr. Blanton's opinion is supported by substantial evidence and thus due to be affirmed.[9] The fact that Quarles can point to other evidence arguably bolstering Dr. Blanton's opinion does not change this determination. *See Ingram*, 496 F.3d at 1260 (holding that district court must affirm if ALJ's decision is supported by substantial evidence, even if the evidence preponderates against it).

Accordingly, the Court **OVERRULES** Quarles's second claim of reversible error. There being no other claims of error raised,[10] the Court finds that the

---

[9] Quarles argues that "the ALJ's rejection of the medical opinions of Dr. Blanton on the basis said opinions of record are not consistent with objective medical evidence is the textbook definition of attempted conclusory rationale in which is not grounded in the evidence of record." (Doc. 26 at 13). While this stated reason, standing alone, would arguably be insufficient to meet the ALJ's burden to explain his reasons for assigning little weight to Dr. Blanton's opinion "with particularity," the undersigned has determined that the ALJ adequately articulated other reasons that are supported by substantial evidence. Nevertheless, the ALJ's finding that Dr. Blanton's opinion was "not consistent with the objective medical evidence" is in line with his discussion of the other mental health evidence of record – a 2009 report by Dr. Richard Reynolds (R. 31), Dr. Tocci's 2011 report (R. 31 – 32), and records from the Cahaba Center for Mental Health (R. 32, 35).

[10] Quarles also conclusorily claims the ALJ "failed to consider or apply Listing 12.05." (Doc. 26 at 6, 9). However, her only substantive argument to this effect is that, "[i]n light of the objective testing administered by Dr. Blanton and his examination findings, the ALJ's failure to mention or evaluate Ms. Quarles's case under the Intellectual Disability listing also demonstrates the lack of reasoning applied throughout his decision." (*Id.* at 14). To the extent this argument rests on the ALJ's purported improper rejection of Dr. Blanton's opinion, it fails because the undersigned has determined the ALJ decision to that opinion should be affirmed. Regardless, because Quarles makes only passing and perfunctory mention of this issue, it is deemed abandoned. *See* n.3 *supra. Cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) ("Abandonment of an issue can…occur when passing references appear in the argument section of an opening brief, particularly

Commissioner's final decision denying Quarles benefits is due to be **AFFIRMED**.

### IV.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued March 30, 2017, denying Quarles's applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 14th day of February 2018.

>   */s/ Katherine P. Nelson*
>   **KATHERINE P. NELSON**
>   **UNITED STATES MAGISTRATE JUDGE**

---

when the references are mere background to the appellant's main arguments or when they are buried within those arguments." (quotation marks omitted)).